IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GINGER SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 3:08-CV-519-WKW [WO] |
| ) | |
| THE COLEMAN COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### **MEMORANDUM OPINION AND ORDER**

This product liability case arose when a "utility line," manufactured by or under license of Defendants, snapped while it was being used to tow a person on an inner tube behind a boat. One piece of the line recoiled and hit Plaintiff Ginger Smith in the eye. Before the court is a fully briefed motion for summary judgment by Defendants The Coleman Company and Lehigh Consumer Products, LLC. (Docs. # 18, 25, 28.) For the reasons that follow, the motion is due to be granted.

### I. JURISDICTION AND VENUE

The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 1441. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of each.

### II. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

*Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Celotex*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary

2

judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). If the evidence on which the nonmoving party relies, however, "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment should be granted in favor of the defendant. *Celotex*, 477 U.S. at 323.

Thus, in cases where the evidence is admissible on its face or can be reduced to admissible form and establishes there is no genuine issue of material fact, summary

judgment is proper. *Celotex*, 477 U.S. at 323-24.

### III. FACTS AND PROCEDURAL HISTORY

The facts, presented in the light most favorable to Ms. Smith, are relatively straightforward, and the court will not belabor those facts unnecessary to the resolution of the pending motion. On July 3, 2006, Ms. Smith was a passenger on a boat being operated on West Point Lake in Chambers County, Alabama. Ronald Smith (who is not related to the Plaintiff) was operating the boat, which was towing Ms. Smith's son, Shane McClellan, on an inflatable inner tube behind the boat. Connecting the inner tube to the boat was the item at the center of this case, a fifty-foot Model 51650 prolypropylene "Utility Line" ("line"). The line was manufactured by Defendant Lehigh Consumer Products, LLC ("Lehigh"), and labeled as a product of Defendant The Coleman Company ("Coleman"), pursuant to a license issued by Coleman. The line was purchased at a nearby Wal-Mart store.

Later on the same day, while Shane McClellan was being towed on the inner tube, the line snapped, and the end connected to the boat flew back toward the boat and hit Ms. Smith in the eye, causing the loss of that eye. Shane McClellan is described as having weighed 150 pounds at the time of the incident, while the tube itself weighed five to ten pounds. (Doc. # 19, Ex. A, at 36, Ex. C, at 15.) Ronald Smith estimated the speed of the boat at the time of the incident as about 25 mph. (Doc. # 19, Ex. A, at 33.)

The packaging of the line contained several statements relevant to the resolution of this summary judgment motion. The package is reproduced as Exhibit J to Document # 19,

4

which is the source for the following description. (*See also* Doc. # 19, Ex. H (photographs of original, torn label)).) A paper insert identifies that product as a "50 ft x 5/16 in UTILITY LINE." Just below that appears the phrase "Ideal for use on boat or dock." Still farther down the insert, and in an all-caps font smaller than that used in the first statement, appears, divided over two lines: "175 LBS WORKING LOAD LIMIT/ STAYS AFLOAT." A longer cautionary message appears at the bottom of the insert. It states:

> *Avoid using a knot, splicing is preferable. Knots reduce the strength of the rope up to 40%. Do not use this product where personal safety could be endangered. Never stand in line with a rope under tension. Such a rope, particularly nylon rope, may recoil (snap back). Misuse can result in serious injury or death.*

Finally, the package stated that the rope was "100% polypropylene" and contained a chart comparing the qualities of "nylon" and "poly" ropes.

Defendants also submit photographs of the warning label printed on the inner tube itself. Most relevant is a portion of the warning label advising boaters to "[u]se a tow rope of at least 1500 lbs average tensile strength for pulling a single person . . . ." (Doc. # 19, Ex. I.) The overall size of this warning label is 8" x 9", and its text complies with the warning label recommended by the Water Sports Industry Association for use on inflatable tubes. (Doc. # 19, Ex. L.)

Ms. Smith filed suit in the Circuit Court of Chambers County, Alabama, originally including Ronald Smith as a co-plaintiff and Wal-Mart Stores, Inc., as a co-defendant. Those parties are no longer in the case. (Doc. # 1, Ex. B, at 64; Doc. # 17.) Similarly, while the

original complaint contained claims asserting manufacturing defects and design defects in the utility line, those claims have been voluntarily dismissed. (Docs. # 16, 17.) The two remaining claims are for negligent failure to warn and breach of implied and express warranties. (Doc. # 1, Ex. B, at 3-4 (Compl.).) On July 1, 2008, the case was removed to federal court on the basis of diversity jurisdiction, the requirements of which appear to be satisfied. (Doc. # 1 (Notice of Removal)); *see* 28 U.S.C. § 1332.

## IV. DISCUSSION

**A.  Negligent Failure to Warn**

Under Alabama law, a claim for "negligent failure to give adequate warning," like most tort claims, requires the breach of duty by the defendant, and a showing that the breach was the proximate cause of injury to the plaintiff.[1]  *Gurley ex rel. Gurley v. Am. Honda Motor. Co.*, 505 So. 2d 358, 361 (Ala. 1987). A manufacturer has a duty "to warn users of the dangerous propensities of a product only when such products are dangerous when put to their intended use." *Id*. "[A] manufacturer is under no duty to warn a user of every danger which may exist during the use of the product, especially when such danger is open and obvious." *Id*. "Where a warning is necessary, the warning need only be one that is reasonable under the circumstances and it need not be the best possible warning." *Id*. Nor

---

[1] The body of law governing product liability claims in Alabama is referred to as the "Alabama Extended Manufacturer's Liability Doctrine," or AEMLD. This doctrine was first enunciated by the Supreme Court of Alabama in 1976. *See Casrell v. Altec Indus., Inc.*, 335 So. 2d 128 (Ala. 1976); *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976). Essentially, the AEMLD established a general strict-liability regime for product liability claims. Given that the claims for defective design and manufacture are no longer in the case, however, the court will focus on the case law specifically governing the negligent failure to warn claim.

is there a duty "to warn of every potential danger or to explain the scientific rationale for each warning . . . ." *Id*.

Defendants assert that, for several reasons, Plaintiff has not shown that any defect in the product's labeling was the proximate cause of her injury, and also that there was no duty to warn because the product was not used in its intended manner. Finding the first argument dispositive, the court need not reach the remaining contention.

### 1. *Failure to Read and Follow the Existing Warning*

It is a defense to a negligent failure to warn claim that there is no evidence "'that the allegedly inadequate warning would have been read and heeded and would have kept the accident from occurring.'" *Yarbrough v. Sears, Roebuck & Co.*, 628 So. 2d 478, 482 (Ala. 1993) (quoting *Gurley*, 505 So. 2d at 361). While this phrasing is somewhat confusing at first read, the *Yarbrough* court's accompanying explanation makes it clear that the question is essentially whether the "allegedly inadequate warning" *was* "read and heeded," and if not, whether doing so would have prevented the accident. *Id.* at 482-83. In *Yarbrough*, it was not disputed that the plaintiff had *read* the complained-of warning, but the court found that it was nonetheless clear from his actions that he had not *heeded* the "clear, specific warnings and instructions" at issue. *Id*. at 482. Accordingly, his negligent-failure-to-warn claim failed as a matter of law. *Id*. at 483; *see also Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1287-88 (M.D. Ala. 2001) (holding that a negligent-failure-to-warn claim failed when it was undisputed that the plaintiffs had not read the owner's manual containing

7

the allegedly defective warnings).

In this case, Defendants point to the deposition testimony of Ronald Smith,[2] who purchased the line and attached it to the boat and inner tube. Mr. Smith's testimony was that he did not recall reading "any other part of the warnings on the package other than the poundage." (Doc. # 19, Ex. A, at 22-24.) He specifically answered a question in the negative about whether he had read the warning against tying knots in the line. *Id*. According to Defendants, Mr. Smith's use of the line violated three parts of the warnings given on the package insert, which he confessed having not read: (1) the warning against tying knots in the line; (2) the warning against using the line where personal safety could be

---

[2] The court pauses to contemplate an issue not discussed by either party, but which seems so fundamental to the cause of action asserted by Ms. Smith that it is difficult to adequately address the failure-to-warn claim without touching on it. That issue is how a negligent failure-to-warn claim is affected by the plaintiff not having been the purchaser, or even the "user," of the item at issue. Both parties proceed as if the relevant inquiry is whether Mr. Smith, or perhaps either Mr. or Ms. Smith, read and followed the warnings on the package. It is undisputed that Mr. Smith purchased the rope and is the person who tied it to the boat and inner tube. Given the disposable nature of the package on which the warnings appeared, it is unclear whether Ms. Smith even had the opportunity to read the warnings – and so, in the summary judgment posture, this court must assume that she did not, if that factual question is relevant to the outcome.

Alabama case law indicates, though, that this twist in the facts does not change the proper rubric for analyzing Ms. Smith's claim. In *Kelly v. M. Trigg Enterprises, Inc.*, 605 So. 2d 1185, 1192 (Ala. 1992), a driver used a product marketed as an air freshener as an inhalant, allegedly causing her to crash her automobile, injuring the plaintiffs. The plaintiffs brought both negligent failure-to-warn and AEMLD claims against the manufacturer of the air freshener. Although the plaintiffs, with no previous relationship to the driver, obviously could not have read the warnings on the air freshener packaging, the court concluded that the driver's (as the "user" of the product) failure to read and follow the warnings was the relevant question, and so, "summary judgment on the failure-to-warn claim was proper," given that the driver had not followed the warning against using the product as an inhalant. *Id*. (citing *Gurley*, 505 So. 2d at 361). While the *Kelly* court found that the plaintiffs could still maintain their AEMLD claims against the manufacturer, there are no such claims remaining here. In light of *Kelly*, the court concludes that the relevant question is whether Mr. Smith, not Ms. Smith, read and followed the warnings.

endangered; and (3) the warning against standing in line "with a rope under tension."

Plaintiff's response to this argument is unpersuasive. Conceding that Mr. Smith did not recall reading the relevant warnings, Plaintiff's argument seems to be that the phrase "warning" has a particular, technical meaning, such that the statements on the package here were not "warnings" for the purposes of the Alabama case law. The contours of this view are not very well fleshed out, but the argument is perhaps that because the statements on the packaging did not actually contain the word "WARNING," with accompanying symbols such as an exclamation mark within a triangle, they were not actually warnings at all, but merely "safety information." (*See* Doc. # 25, at 5-6, 10-11.)

The only basis for this distinction is a statement made by one of Defendants' experts that "warnings can change behavior, but it is difficult to change behavior with safety information." (Doc. # 26, Ex. 3, at 106.) Perhaps there is a technical distinction, recognized by experts in product labeling or in regulations, between the two concepts, and perhaps, under that distinction, the package insert here is "safety information" rather than a "warning," although it is far from clear from the deposition excerpts before the court that this is what the expert meant. *See id.* Regardless, the argument misses the point that the court must apply the word "warning" as it has been used in the Alabama case law, which governs this diversity case. The cases cited above give no indication of limiting the word "warning" to a narrow, technical meaning. Certainly, the common use of the word "warning" does not limit the concept to statements appearing under the word "WARNING," accompanied by particular

9

symbols, or colored in bright orange. The statements appearing on the utility line's package are cautionary in nature, designed to *warn*, in the ordinary sense of the term, users of the product about potential dangers of usage.

Thus, the court concludes that the statements on the package were warnings for purposes of Alabama law. As stated above, it is conceded that Mr. Smith did not read the warnings, except for the weight limitation. The only remaining question is whether failure to heed the warnings caused the accident. The court is reluctant to conclude that the warning against uses "where personal safety could be endangered" can suffice for this purpose; it is so vague as to be essentially meaningless. Any use, no matter how seemingly safe or appropriate, that actually resulted in injury could be said after the fact to have endangered personal safety. The other two warnings, however, are quite specific, and both were violated by Mr. Smith. Mr. Smith tied knots in the rope in order to attach it to the boat and the inner tube. (Doc. # 19, Ex. D, at 162.) Both Mr. Smith and Plaintiff were on board the open boat towing the inner tube behind it; in the ordinary use of language, they were both standing "in line with a rope under tension."

Indeed, it is difficult to conceive how the rope could ever be used for towing someone behind an open boat without both the person being towed and persons on board the boat violating the warning against standing in line with a rope under tension. While Plaintiff's expert prevaricates somewhat over whether Plaintiff was herself "in line" with the rope at the time it broke (Doc. # 19, Ex. D, at 163-64), heeding this warning still would have

prevented the accident altogether, as there would have been no way to tow Plaintiff's son on the inner tube without putting him in line with the rope under tension. In any event, Plaintiff's response to the summary judgment motion does not contest this point, arguing instead that there was simply no warning at all on the packaging.

Plaintiff's further arguments in opposition to summary judgment on this claim merit less discussion. Plaintiff reemphasizes that there was no warning on the package specifically instructing that it not be used as a tow rope, and suggests that its designation as an "all purpose" line "ideal for use on boat or dock" is thus misleading. This general language does not contravene the more specific warnings on the packaging, warnings that Mr. Smith did not read or follow. Moreover, as the *Gurley* court noted, "[w]here a warning is necessary, the warning needs only be one that is reasonable under the circumstances and it need not be the best possible warning. There is no duty to warn of every potential danger . . . ." 505 So. 2d at 361.

Finally, the court does not base its ruling on Defendants' argument that towing a 150-pound child (plus a five to ten pound inner tube) would have produced a dynamic load far in excess of the 175-pound limitation on the rope, so Plaintiff's argument that there was no way for Mr. Smith or Plaintiff to be aware of the difference between static and dynamic loads is irrelevant. The court also does not base its decision on arguments concerning the warning label on the inner tube itself.

Because there is no evidence that the allegedly inadequate warning was read and

11

heeded, or that, if it had been read and heeded, the accident would have occurred anyway, the motion for summary judgment on the negligent-failure-to-warn claim is due to be granted.

### *2. Other Arguments*

Having found that Defendants' first argument for summary judgment on this claim is sufficient, the court need not reach the arguments that Mr. Smith failed to heed the one warning he did read, that an additional or different warning would not have prevented the accident, and that there was no duty to warn because the line was not used in its intended manner.

### B. **Express and Implied Warranty Claims**

Plaintiff limits her response to the summary judgment motion with respect to the express and implied warranty claims to a single paragraph, so the court will not discuss them at length. With respect to the express warranty claim, Plaintiff's claim is that the statement that the line was "ideal for use on boat or dock" constitutes an express warranty. Statements "that are mere sales talk or 'puffery' do not give rise to express warranties," while "representations of fact" may give rise to such warranties. *La Trace v. Webster*, 17 So. 3d 1210, 1217 (Ala. Civ. App. 2008); *see* Ala. Code § 7-2-313. While the word "ideal" seems closer to the description of an item as "in good shape" that Alabama courts have found to constitute "puffery," *Scoggin v. Listerhill Employees Credit Union*, 658 So. 2d 376, 377 (Ala. 1995), arguably the reference to use on a boat or dock could constitute a more specific

assurance in some circumstances. Regardless, the phrase "ideal for use on boat or dock" is not the equivalent of "ideal for towing behind a boat," especially when, as explained in the previous section, the specific warnings on the package make it essentially impossible to use the utility line for towing in compliance with the packaging. There is no evidence that any express warranty was breached, and summary judgment is due to be granted on this claim.

To the extent that Plaintiff makes a claim for breach of an implied warranty of merchantability, she does not explain how that claim fits the requirements of the statute, and the claim fails for essentially the same reason as the express warranty claim. A use excluded by warning labels cannot be an "ordinary purpose[] for which such goods are used." Ala. Code § 7-2-314.

The final warranty claim is for breach of an implied warranty of fitness for a particular purpose. *See* Ala. Code § 7-2-315. Plaintiff has done no more than assert that Defendants had "reason to know" that the line would be used to tow persons behind a boat; regardless, Plaintiff clearly did not "rely on the seller's skill or judgment to select or furnish suitable goods." *Id*. Rather, Mr. Smith selected and purchased the utility line for himself at a Wal-Mart store. Summary judgment is due to be granted on the warranty claims.

The court need not reach Defendants' argument that Coleman is entitled to summary judgment because its only role in producing the utility line was to license its name to Lehigh.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motion for Summary

Judgment (Doc. # 18) is GRANTED.  It is further ORDERED that the Motion to Exclude Expert (Doc. # 20) is DENIED as moot.  It is further ORDERED that this case is DISMISSED with prejudice.  A separate judgment will be entered.

DONE this 4th day of February, 2010.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE